1  WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Padilla Baldonado, ) | CIV 11-90-PHX-FJM (MHB) |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| Charles Ryan, et al., ) | |
| Respondents. ) | |

TO THE HONORABLE FREDERICK J. MARTONE, UNITED STATES DISTRICT JUDGE:

Petitioner Joseph Padilla Baldonado, who is represented by attorney Thomas J. Phalen, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 2). Respondents filed an Answer (Doc. 12), and Petitioner filed a Reply (Doc. 13).

**BACKGROUND**

On June 19, 1992, Petitioner was convicted on one count of first-degree murder. (Doc. 12, Exh. A.) The Arizona Court of Appeals set forth the following facts in its Memorandum Decision affirming Petitioner's convictions and sentences on direct appeal.[1] (Doc. 12, Exh. B.)

---

[1] "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see William v. Rhoades, 354 F.3d 1101, 1106 (9th Cir. 2004).

On the evening of May 10, 1991, the defendant and Robert Flores picked up several of their friends in Flores' car and went party-hopping. The defendant, Flores and one or two of the others in the group drank some beer at each stop and tried some LSD. Both the defendant and Flores became very drunk. At some point in the early morning hours of May 11, the group got into Flores' car to take one girl to her home near 16th Street and McDowell Road in Phoenix. Leaving that house, Flores was driving; the defendant was in the front passenger seat and four other persons were in the back seat.

As Flores drove onto the 16th Street ramp to the Red Mountain Freeway, [footnote omitted] a pickup truck driven by Michael Todd Bingham cut in front of Flores' vehicle. Flores got angry and used an expletive to describe Bingham and his action. The defendant also was irate and directed Flores to catch up to Bingham's truck on the freeway. Flores obeyed and, after catching up to Bingham, he slowed in an effort to keep pace with the truck, which was traveling in the lane to the right of Flores' vehicle. The defendant then opened his window, produced a .22 caliber, semi-automatic pistol from under his seat, leaned out of the car over the door ledge with both arms extended straight out in front of him, and fired four shots into the cab of Bingham's truck, fatally striking Bingham once in the head. The back seat passengers saw Bingham's head fall forward and his vehicle drift off to the left of the freeway, striking the divider near Third Street in a shower of sparks.

Both the defendant and Flores laughed as they realized that the defendant had hit his target. Flores was heard to say "[y]ou hit him. I know you hit him." And the defendant responded, "[y]eah, I shot that motherfucker. I killed him."

At approximately 3:00 a.m., a motorist noticed Bingham's truck resting next to the retaining wall of the Third Street exist ramp on the wrong side of the road. He stopped and saw a great deal of blood on the seat next to Bingham, who was slumped over the steering wheel. The motorist checked and felt that Bingham still had a faint pulse. He called 9-1-1 from his mobile phone and, although rescue personnel responded quickly, Bingham was pronounced dead at a nearby hospital.

On May 22, 1991, the police received an anonymous telephone call that led them to a witness, one of the passengers who was in the back seat of Flores' vehicle at the time of the shooting. All four of the back-seat passengers eventually testified at the defendant's trial.

The murder weapon belonged to Flores' father and was recovered during the execution of a search warrant at the Flores home. The bullet fragments recovered form the Bingham vehicle and the one taken from Bingham's body could not be conclusively matched with the gun recovered during the search. However, at least one witness identified the gun as the one that Flores kept under the front passenger seat of the vehicle in which they were riding on May 11.

The trial court instructed the jury on the elements of murder in the first and second degrees but refused defense counsel's request for an instruction on reckless manslaughter. The jury found the defendant guilty as charged of murder in the first degree. The defendant was sentenced to a term of life imprisonment without the possibility of release for 25 years and timely appealed.

(Doc. 12, Exh. B at 2-4.)

On direct appeal, Petitioner raised three grounds for relief: (1) the trial court erred when it did not instruct the jury on the lesser included offense of reckless manslaughter; (2) the trial court committed fundamental error when it failed to provide the jury an instruction for manslaughter "based upon second degree murder, upon sudden quarrel or heat of passion after adequate provocation;" and (3) the jury instruction defining "reasonable doubt" constituted fundamental error. (Doc. 12, Exh. C.)

On November 8, 1994, the Arizona Court of Appeals affirmed Appellant's convictions and sentences. (Doc. 12, Exh. B.) The Arizona Supreme Court denied a subsequently filed petition for review on June 23, 1995. (Doc. 12, Exhs. D, E.)

While Petitioner's direct appeal was pending, Petitioner simultaneously sought post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. On December 16, 1994, Petitioner filed a notice of post-conviction relief. (Doc. 12, Exh. F.) Petitioner thereafter filed a *pro se* petition for post-conviction relief, raising six claims: (1) defense counsel rendered ineffective assistance of counsel by failing to: (i) properly investigate and object to the allegedly false testimony of Regina M., (ii) raise a defense of diminished capacity due to intoxication, (iii) request jury instructions on "heat of passion" and diminished capacity, (iv) object to prosecutorial misconduct, and (v) properly inform him regarding an alleged issue of juror misconduct; (2) juror misconduct; (3) the trial court improperly precluded him from presenting expert testimony; (4) the prosecutor engaged in misconduct by presenting perjured testimony; (5) insufficient evidence of guilt based upon inconsistent and biased testimony; (6) the trial court improperly precluded him from presenting from evidence regarding intent. (Doc. 12, Exh. G.)

On June 5, 1995, the trial court dismissed the petition concluding that Petitioner had failed to present a colorable claim for relief. (Doc. 12, Exh. H.)

On September 15, 1995, Petitioner filed a petition for review in the Arizona Court of Appeals, arguing that the trial court abused its discretion when it denied relief on his claim that:

> [T]rial counsel [rendered in effective assistance by failing to]: object to known false testimony of a state's witness ... (2) withdraw due a conflict of interest ... (3) impeach a state witness ... (4) raise issue with the preclusion of diminished capacity due to intoxication ... (5) request the heat of passion jury instruction ... (6) object to the prosecutor's actions ... (7) [] advise Petitioner prior to waiving Petitioner's presence during an in chamber hearing regarding the tainting of two [jurors].

(Doc. 12, Exh. I.) Petitioner abandoned his remaining claims, stating that he "did not address" the additional claims that had been raised in the petition for post-conviction relief. (Doc. 12, Exh. I at 7.)

On April 17, 1996, the Arizona Court of Appeals dismissed the petition for review, finding that it had been untimely filed. (Doc. 12, Exh. J.) Over 12 years later, on July 22, 2008, Petitioner filed a second petition for post-conviction relief in State court, raising three claims: (1) trial counsel rendered ineffective assistance by failing to properly convey the terms of a plea agreement offer; (2) the trial court erred in instructing the jury regarding its consideration of the lesser included offenses; and (3) the trial court erred in instructing the jury regarding the definition of "premeditation." (Doc. 12, Exh. K.)

On August 12, 2008, the trial court dismissed the petition. (Doc. 12, Exh. L.) The court first found that the petition was untimely filed and thus precluded under Rule 32.4(a) of the Arizona Rules of Criminal Procedure. (Doc. 12, Exh. L.) The court then stated, "[i]n addition, defendant is precluded from relief on these claims pursuant to Rule 32.2(a) Arizona Rules of Criminal Procedure, because these claims either were or could have been raised on appeal or in his prior Rule 32 proceeding." (Doc. 12, Exh. L.) Finally, the court found that Petitioner's ineffective assistance of counsel claim was not entitled to an exception from preclusion pursuant to Rule 32.1(g) of the Arizona Rules of Criminal Procedure because, despite Petitioner's claim to the contrary, State v. Donald, 10 P.3d 1193 (Ariz. Ct. App. 2000), was not a significant change in the law "that applie[d] to [Petitioner's] case." (Doc. 12, Exh. L.)

Petitioner, thereafter, filed a petition for review in the Arizona Court of Appeals arguing that: (1) trial counsel rendered ineffective assistance by failing to properly convey the terms of the plea agreement; (2) the trial court erred in instructing the jury that they were

- 4 -

required to unanimously agree to acquit Petitioner of the greater offense before considering a lesser-included offense; and (3) the trial court erred in defining "premeditation" to the jury. (Doc. 12, Exh. M.) On December 14, 2009, the Arizona Court of Appeals denied review. (Doc. 12, Exh. N.) The Arizona Supreme Court denied review on May 21, 2010. (Doc. 12, Exh. O.)

On January 1, 2011, Petitioner filed an Amended Petition for Writ of Habeas Corpus raising three grounds for relief. (Doc. 2.) In Ground One, Petitioner asserts that he was deprived of effective assistance of counsel at the plea stage of the proceedings, in violation of his Sixth and Fourteenth Amendment rights. (Doc. 1 at 9-21.) In Ground Two, he claims the jury instruction on premeditation violated his Sixth and Fourteenth Amendment rights. (Doc. 1 at 21-23.) In Ground Three, he asserts that the trial court's "unanimous acquittal first" jury instruction violated his Fourteenth Amendment due process rights. (Doc. 1 at 23-27.)

**DISCUSSION**

In their Answer, Respondents contend that Petitioner's habeas petition is untimely and must be dismissed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). The statute provides, as is applicable here:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

"[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Additionally, "[t]he time during which a properly

filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); see Lott v. Mueller, 304 F.3d 918, 921 (9th Cir. 2002). A state petition that is not filed, however, within the state's required time limit is not "properly filed" and, therefore, the petitioner is not entitled to statutory tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Id. at 414.

A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." Chavis v. Lemarque, 382 F.3d 921, 925 (9th Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-conviction relief is filed even though the petition is not filed until later. See Isley v. Arizona Department of Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief is also pending during the intervals between a lower court decision and a review by a higher court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold, 536 U.S. 214, 223 (2002)). However, the time between a first and second application for post-conviction relief is not tolled because no application is "pending" during that period. See Biggs, 339 F.3d at 1048; see also King v. Roe, 340 F.3d 821 (9th Cir. 2003) (The petitioner was "not entitled to tolling during the interval between the completion of one round of state collateral review and the commencement of a second round of review."). Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations period that ended before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).

The statute of limitations under AEDPA is subject to equitable tolling in appropriate cases. See Holland v. Florida, ––– U.S. –––, –––, 130 S.Ct. 2549, 2560 (2010). However, for equitable tolling to apply, a petitioner must show "'(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way'" and prevented him from filing a timely petition. Id. at 2562 (quoting Pace, 544 U.S. at 418).

Respondents argue that Petitioner's habeas petition is untimely because it was not filed within 1-year of the effective date of the AEDPA. (Doc. 12, at 7-8.) The Court agrees with Respondents. Petitioner's conviction became final on direct appeal on September 21, 1995, when the 90-day period for seeking certiorari in the United States Supreme Court expired, see Bowen, 188 F.3d at 1158-59, which was prior to the effective date of the AEDPA.[2] Thus, Petitioner had until April 24, 1997, to file his federal habeas petition. Petitioner, however, did not file his pending habeas petition until January 13, 2011 – well over 13 years after the expiration of the 1-year deadline. Accordingly, in the absence of statutory or equitable tolling, the pending habeas petition is time-barred.

Here, no amount of statutory tolling can render this habeas petition timely. Petitioner's first post-conviction relief proceedings were resolved before the AEDPA was enacted and, thus, has no effect on the timeliness of the instant Petition.[3] And, although Petitioner filed a second, successive petition for post-conviction relief on July 22, 2008, the federal limitations period had *already* expired on April 24, 1997. Petitioner's subsequently filed post-conviction relief petition filed after the federal limitations period did not revive or otherwise re-start the then-expired limitations period. There can be no tolling past the

---

[2] In his Reply, Petitioner argues that language set forth in 28 U.S.C. § 2244 stating "the date on which the judgment became final" and "the pertinent judgment" should refer to the "state judgment denying the PCR claims" rather than "the judgment of conviction." The Court is not persuaded. The term "judgment" in § 2244 "refers to the judgment of conviction and sentence," and "direct review" is the "direct appellate review of that judgment." Redd v. McGrath, 343 F.3d 1077, 1081 (9th Cir. 2003). For purposes of § 2244(d)(1)(A), a judgment becomes final when the United States Supreme Court denies a petition for certiorari or affirms the conviction on the merits or when the time for seeking certiorari expires. See Hemmerle v. Schriro, 495 F.3d 1069, 1074 (9th Cir. 2007) (citing Clay v. United States, 537 U.S. 522, 531 (2003)). See also Griffith v. Kentucky, 479 U.S. 314, 321 n.6 (1987) (explaining that "final" means "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for writ of certiorari elapsed or a petition for certiorari finally denied").

[3] Although Petitioner filed a petition for review of the dismissal of his first petition for post-conviction relief in the Arizona Court of Appeals, it did not toll the federal limitation's period because it was untimely filed and, therefore, was not "properly filed."

| | |
|---|---|
| 1 | expiration of the limitations period, because "there is no period remaining to be tolled." |
| 2 | Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000), cert. denied, 531 U.S. 991 (2000); |
| 3 | see Ferguson, 321 F.3d at 823 (announcing that, "[l]ike the Eleventh Circuit, we hold that |
| 4 | section 2244(d) does not permit the reinitiation of the limitations period that has ended before |
| 5 | the state petition was filed") (citing Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001)); |
| 6 | Jimenez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) (holding that the federal habeas |
| 7 | petitioner's filing of a state post-conviction relief petition "well after the AEDPA statute of |
| 8 | limitations ended" constituted a delay that "resulted in an absolute time bar to refiling after |
| 9 | his state claims were exhausted"). Petitioner's petition is untimely pursuant to |
| 10 | §2244(d)(1)(A), unless Petitioner can establish equitable tolling. |
| 11 | Petitioner's counsel does not argue that any of the claims raised are timely pursuant |
| 12 | to the §2244(d)(1)(D), although in Petitioner's *pro se* petition, he indicated the intent to avail |
| 13 | himself of that provision. (Doc. 1, at 11.) Even conceding that when Petitioner filed his first |
| 14 | petition for post-conviction relief he did not have the benefit of the transcribed interview of |
| 15 | his trial counsel in 2008 (Doc. 2, Exh. 10), the facts supporting ground one of his habeas |
| 16 | petition were known to Petitioner, as evidenced by his own affidavit. (Id., Exh. 11.) Thus, |
| 17 | although Petitioner does not argue the application of §2244(d)(1)(D), he could have, through |
| 18 | the exercise of diligence discovered the facts regarding his claim of ineffective assistance of |
| 19 | counsel at the plea proceeding stage. |
| 20 | The Ninth Circuit recognizes that the AEDPA's limitations period may be equitably |
| 21 | tolled because it is a statute of limitations, not a jurisdictional bar. See Calderon v. United |
| 22 | States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other |
| 23 | grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). |
| 24 | Tolling is appropriate when "'extraordinary circumstances' beyond a [petitioner's] control |
| 25 | make it impossible to file a petition on time." Id.; see Miranda v. Castro, 292 F.3d 1063, |
| 26 | 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under |
| 27 | AEDPA] is very high, lest the exceptions swallow the rule") (citations omitted). "When |
| 28 | external forces, rather than a petitioner's lack of diligence, account for the failure to file a |

timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. Petitioner must also establish a "causal connection" between the extraordinary circumstance and his failure to file a timely petition. See Bryant v. Arizona Attorney General, 499 F.3d 1056, 1060 (9th Cir. 2007).

Petitioner does not set forth any grounds for equitable tolling in his habeas petition or Reply to Respondents' Answer. Petitioner does not explain why he could not have raised the issues he now raises in his habeas petition within the 1-year statute of limitations. Although Petitioner filed his first petition for post-conviction relief *pro se*, he did manage to present several issues to the court. Petitioner does not offer an explanation as to why he did not raise in that petition the issues he raised 13 years later in 2008. In any event, a petitioner's *pro se* status, ignorance of the law, and lack of representation during the applicable filing period do not constitute extraordinary circumstances justifying equitable tolling. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."). Accordingly, Petitioner is not entitled to equitable tolling and his habeas petition is, therefore, untimely.

**CONCLUSION**

Having determined that Petitioner's habeas petition is untimely, the Court will recommend that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 2) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 25th day of October, 2011.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge